```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
                       DALLAS DIVISION

SHARRI K. EVENSON,              §
                                §
            Plaintiff,           §
                                § Civil Action No. 3:08-CV-0759-D
VS.                             §
                                §
SPRINT/UNITED MANAGEMENT CO.,   §
                                §
            Defendant.           §
```

                        MEMORANDUM OPINION
                            AND ORDER

    The question presented by defendant's motion to dismiss is whether this Title VII[1] plaintiff's EEOC[2] questionnaires—completed several months before she filed a charge of discrimination with the EEOC—constitute a charge of discrimination under 42 U.S.C. § 2000e-5. Concluding that they do not, the court holds that plaintiff failed to exhaust her Title VII sex discrimination claim, and it dismisses the claim with prejudice.

                                I

    Plaintiff Sharri K. Evenson ("Evenson") was employed by defendant Sprint/United Management Co. ("Sprint") until she was discharged. Following her termination, Evenson submitted to the EEOC two forms: EEOC Form 283, entitled "Charge Questionnaire" ("Charge Questionnaire"), and an accompanying document, entitled "EEOC Intake Questionnaire" ("Intake Questionnaire"). In the

---

    [1]Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

    [2]Equal Employment Opportunity Commission.

portion of the Charge Questionnaire in which the complainant is asked to describe briefly the discriminatory conduct, Evenson stated that, after she was discharged, she was told that her "position was given to a younger male." P. App. Ex. A at 2.[3] The form language of the Intake Questionnaire lists a number of possible bases for discrimination and requests that the complainant place a check mark next to each space that indicates a basis for her claim of discrimination. Among other grounds, Evenson placed a check mark next to the space for "Sex." P. App. Ex. B at 2. Evenson submitted another document to the EEOC the next day, entitled, "Layoff Questionnaire." In the Layoff Questionnaire, in a sentence that included a blank and that read, "I believe I was discriminated against because of my _____ (race, sex, religion, national origin, age, disability and/or retaliation)[,]" P. App. Ex. C at 2-3, Evenson wrote "disability age & sex retaliation" in the blank and encircled the words "sex," "age," "disability," and "retaliation." *Id.* Additionally, Evenson wrote the following beneath the part of this sentence contained on page 2 of the form: "mostly males replaced me in supporting my client groups." *Id.* at 2.

Several months later, Evenson signed a formal charge of discrimination, an EEOC Form 5 ("Form 5"), that had been prepared

---

[3]The court cites Evenson's appendix in this manner because she did not paginate it as required by N.D. Tex. Civ. R. 7.1(i)(4).

by an EEOC employee. The Form 5 lists a number of grounds for alleging discrimination, including discrimination based on "sex." But the box next to "sex" was left blank; only the boxes for "retaliation" and for "age" and "disability" discrimination were checked. D. App. Ex. B.[4] The part of Form 5 that described the alleged discrimination did not mention anything related to sex discrimination, and the declaration that accompanied the form likewise did not refer to any type of sex discrimination. The EEOC issued Evenson a right-to-sue letter, and Evenson timely filed suit, asserting, *inter alia*, a Title VII claim for sex discrimination. Sprint moves to dismiss this claim under Fed. R. Civ. P. 12(b)(1) and (b)(6), contending that Evenson failed to exhaust her administrative remedies related to her Title VII sex discrimination claim.

II

A

There is a split of authority within the Fifth Circuit about whether the Title VII exhaustion requirement implicates the court's subject matter jurisdiction. *Pacheco v. Mineta*, 448 F.3d 783, 788 n. 7 (5th Cir. 2006) ("There is disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or

---

[4]Like Evenson's appendix, Sprint's appendix also fails to comply with Rule 7.1(i)(4). It is therefore cited by exhibit designation.

whether it is a requirement that implicates subject matter jurisdiction."). Because this case does not present issues of waiver or estoppel, the court need not resolve this question in deciding Sprint's motion to dismiss. Although the court will discuss exhaustion in jurisdictional terms for purposes of deciding Sprint's Rule 12(b)(1) motion, the result of this decision would be the same if the court considered exhaustion to be "merely a prerequisite to suit." *Id*.

The filing of an administrative complaint is ordinarily considered a jurisdictional prerequisite to a Title VII action. *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) (citing *Ray v. Freeman*, 626 F.2d 439, 442 (5th Cir. 1980)), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). In other words, federal courts do not have jurisdiction to consider unexhausted Title VII claims. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 711 (5th Cir. 1994) (citing *Tolbert v. United States*, 916 F.2d 245, 247-48 (5th Cir. 1990) (per curiam)). Exhaustion does not occur until the plaintiff files a timely charge with the EEOC and is entitled to receive a "right-to-sue" letter. 42 U.S.C. § 2000e-5(e) and (f); *see also Taylor v. Books a Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). "The lawsuit that follows is limited in scope to the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination." *Hayes v. MBNA Tech.,*

*Inc.*, 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004) (Fitzwater, J.) (citing *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990)). "In other words, the complaint may encompass any kind of discrimination 'like or related to' allegations contained in the EEOC charge." *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). This test strikes a balance between two competing Title VII policies.

> On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance.

*Pacheco*, 448 F.3d at 788-89 (internal quotation marks, citations, and brackets omitted).

The court recognizes that Evenson's failure to check the "sex" box on Form 5 does not of itself dictate that she failed to exhaust a Title VII sex discrimination claim. As the Fifth Circuit said in *Pacheco*:

> [t]o be clear, we do not require that a Title-VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency. Nor do we require, for purposes of exhaustion, that a plaintiff allege a prima facie case before the EEOC. Instead, the plaintiff's administrative charge will be read somewhat broadly, in fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger.

*Id.* at 792 (citations omitted). Moreover,

> when determining whether a claim has been exhausted, the decision is to be based on the four corners of the EEOC charge, but the court may also consult related documents, such as a plaintiff's affidavit, her response to the EEOC questionnaire, and attachments to the response, when (1) the facts set out in the document are a reasonable consequence of a claim set forth in the EEOC charge, and (2) *the employer had actual knowledge of the contents of the document during the course of the EEOC investigation*.

*Hayes*, 2004 WL 1283965, at *6 (emphasis added).

B

After examining the four corners of Evenson's Form 5 charge of discrimination and the addendum that accompanied the charge, the court concludes that an EEOC investigation related to sex discrimination could not reasonably be expected to grow out of the allegations of discrimination. Although Evenson was not required to check the "sex" discrimination box on the form, none of the factual allegations in Form 5 or in the addendum relates to a charge of sex discrimination. The EEOC charge complains of retaliation, age discrimination, and disability discrimination. By

contrast, Evenson's Charge Questionnaire, Intake Questionnaire, and Layoff Questionnaire all clearly allege sex discrimination. But Evenson has failed to present any evidence that Sprint had notice of these filings or their contents. Accordingly, the court cannot consider these documents in construing the scope of Evenson's EEOC charge. *See Kelley v. Capitol One Auto Fin.*, 2008 WL 2653202, at \*4 (N.D. Tex. July 7, 2008) (Fitzwater, C.J.) (citing *Hayes*, 2004 WL 1283965, at \*6) (holding that EEOC charge could not be construed in light of letter filed with EEOC because plaintiff's employer never had notice of the contents of that letter).

Evenson contends that her failure to check the sex discrimination box on Form 5 was simply a mistake, and that the EEOC was at fault for omitting this claim. She points out that the EEOC completed Form 5 after receiving her allegations of sex discrimination, and that she signed the Form 5 at a time when she was proceeding *pro se*. Without deciding whether such a mistake by a *pro se* complainant warrants an exception to *Hayes*'s requirement that the employer receive notice, the court concludes that Evenson's Form 5 and the addendum demonstrate that the omission of a sex discrimination claim was not simply excusable inadvertence. Although an EEOC employee may have filled out the typed portion of the Form 5, Evenson did more than simply sign the completed form. In two places on the one-page document, Evenson made changes in her own handwriting, validated by affixing her initials. She crossed

out the typed date of birth and wrote in another. And in the section that described the particular claims of discrimination, Evenson added a claim under the Family and Medical Leave Act of 1993 ("FMLA"). These two handwritten alterations demonstrate that Evenson did not simply sign a form that was provided to her by an EEOC employee. Rather, the Form 5 contains indicia of a carefully reviewed document. Evenson scrutinized it with sufficient care that she noticed the absence of a claim under the FMLA. Moreover, Evenson augmented the Form 5 with a two-page, handwritten addendum that described the grounds for her claims, none of which referred to *sex* discrimination. Thus even if excusable inadvertence warrants an exception to *Hayes*'s conditions for going beyond the four corners of the charge, such a mistake is not present in this case.

Notably, Evenson does not explicitly request that her formal charge of discrimination—the Form 5 and its addendum—be read in light of her earlier filings—the Charge Questionnaire, Intake Questionnaire, and Layoff Questionnaire. Rather, she asserts that these filings themselves qualify as a "charge" under § 2000e-5(b) and (e). Because these filings clearly allege sex discrimination, if they individually or collectively constitute a charge, then Evenson has exhausted her Title VII administrative remedies. This is because an EEOC investigation of sex discrimination could reasonably be expected to grow out of the allegations contained in

these filings. Accordingly, Sprint's motion turns on whether the Charge Questionnaire, Intake Questionnaire, and Layoff Questionnaire, considered individually or collectively, constitute a charge of discrimination under Title VII.

C

Section 2000e-5(b) provides that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." The EEOC's regulations concerning Title VII charges also require verification. 29 C.F.R. § 1601.9 (2007) ("A charge shall be in writing and signed and shall be verified."). "Verified" means "sworn to or affirmed before a notary public, designated representative of the [EEOC], or other person duly authorized by law to administer oaths and take [acknowledgments] *or supported by an unsworn declaration in writing under penalty of perjury*." 29 C.F.R. § 1601.3 (2007) (emphasis added). The regulation that specifically addresses the contents of a Title VII charge states:

> Each charge should contain the following:
> (1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;
> (2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);
> (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b);
> (4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the

> respondent labor organization, as the case may be; and
> (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

29 C.F.R. § 1601.12(a) (2007). A filing that omits some of the § 1601.12(a) information, however, may still constitute a charge: "Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

Evenson signed the Charge Questionnaire and Layoff Questionnaire under penalty of perjury, so these documents were "verified." All three filings satisfy the requirements of § 1601.12(a), except that the Layoff Questionnaire does not indicate whether Evenson has commenced related proceedings before a state or local agency. Thus Evenson's Charge Questionnaire satisfies all of the regulations' requirements for a charge: it is verified and contains all of the § 1601.12(a) information. Under § 1601.12(b), the Layoff Questionnaire also meets the regulations' criteria for a charge, even though it omits one category of § 1601.12(a) information.

If satisfying the EEOC's minimum regulatory criteria could

transform a document into a charge of employment discrimination, the court's analysis would end here. But the cases that address what constitutes a charge of discrimination present additional hurdles beyond the regulatory criteria. The Fifth Circuit has treated a plaintiff's unverified, EEOC intake questionnaire[5] as a Title VII charge of discrimination for the purpose of satisfying the time limitation for filing a charge. *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 76, 78 (5th Cir. 1982). In doing so, the court noted that the intake questionnaire satisfied the minimum requirements of § 1601.12(b) and that the EEOC initially treated the intake questionnaire as a charge by initiating the administrative process. *Id.* at 77-79. Moreover, just two days after the plaintiff in *Price* completed the intake questionnaire, the plaintiff's employer received notice of its contents. *Id.* at 79. The court concluded that the employer's receipt of notice of the intake questionnaire's allegations "fulfilled the congressional purpose for imposing a filing limitation, the provision of prompt notice to the employer[.]" *Id.* (internal quotation marks omitted). The *Price* opinion did not indicate, however, whether an EEOC questionnaire could be considered a charge of discrimination in the absence of the employer's notice of its contents or without the EEOC's actually treating the intake questionnaire as a formal

---

[5]The intake questionnaire was an earlier version of the EEOC Form 283. *See Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 76 (5th Cir. 1982).

charge. But a later, unpublished Fifth Circuit opinion construes *Price* as requiring notice to the employer and EEOC administrative action before an intake questionnaire suffices as a formal charge. *See Harris v. David McDavid Honda*, 213 Fed. Appx. 258, 262 (5th Cir. 2006) (per curiam) ("[Q]uestionnaire was sufficient because the charged party had notice of the allegations contained in the questionnaire and the EEOC had already investigated the allegations of the questionnaire." (summarizing the holding of *Price*)). Although *Harris* is not binding precedent, if the *Harris* panel's reading of *Price* is correct, the Charge Questionnaire, Intake Questionnaire, and Layoff Questionnaire in the present case do not constitute a charge of discrimination because there is no evidence that Sprint had notice of the contents of these filings or that the EEOC treated them as a charge by initiating administrative proceedings.

D

Rather than distinguish *Price* and *Harris*, Evenson urges the court to follow *Federal Express Corp. v. Holowecki*, ___ U.S. ___ , 128 S. Ct. 1147 (2008), in which the Supreme Court addressed when an EEOC intake questionnaire can be considered a charge of age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, for the purpose of satisfying the time limitation in which a charge must be filed. Before analyzing *Federal Express* in detail, the court must address

the opinion's cautionary preface that "the EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII . . . and the Americans with Disabilities Act[.]" *Id.* at 1153.

> While there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination. This is so even if the EEOC forms and the same definition of charge apply in more than one type of discrimination case.

*Id.* (citation omitted).

The exhaustion of administrative remedies requirement under the ADEA is nearly identical to that of Title VII. *See* 42 U.S.C. § 2000e-5; 29 U.S.C. § 626. As with Title VII, the filing of a charge sets in motion the ADEA's administrative remedies, triggering the EEOC's duty to promptly notify the complainant's employer to facilitate informal methods of conciliation. *See* § 2000e-5(b); § 626(d). The EEOC intake questionnaire at issue in *Federal Express* was an earlier version of the Form 283 that Evenson included in her initial submissions. *See Fed. Express*, 128 S. Ct. at 1153, 1161. Neither Title VII nor the ADEA defines what constitutes a charge. *Id.* at 1154. The EEOC's regulation that sets forth the basic information required of a charge under the ADEA is almost identical to its Title VII counterpart. *See* 29 C.F.R. §§ 1601.12 & 1626.8 (2007). The ADEA, however, has no

parallel to § 1601.9, which adds a verification requirement for a Title VII charge.  *See Schlueter v. Anheuser-Busch, Inc.*, 132 F.3d 455, 459 (8th Cir. 1998) ("The ADEA does not require that charges be verified.").  But the intake questionnaire at issue in *Federal Express* satisfied the EEOC's regulatory criteria for a charge; thus the principal issue in *Federal Express* was what more, if anything, the intake questionnaire needed to be treated as a charge.  *See Fed. Express*, 128 S. Ct. at 1155.  Moreover, the Fifth Circuit has held that other parallel provisions of Title VII and the ADEA are interchangeable, i.e., cases interpreting a provision of one statute are controlling as to the other.  *See*, *e.g.*, *Coleman v. New Orleans & Baton Rouge Steamship Pilots' Ass'n*, 437 F.3d 471, 479 n.7 (5th Cir. 2006) ("The terms 'employer' and 'employee' have been identically treated under the ADEA and Title VII.  Thus, cases interpreting the terms under either statute may be considered in determining whether the defendants are employers for the purposes of the ADEA."); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) ("The standard of proof for Title VII discrimination claims also applies to . . . ADEA claims."); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 n.2 (5th Cir. 2002) ("This circuit applies the *McDonnell Douglas* rubric to both Title VII and ADEA claims."); *Hold v. JTM Indus., Inc.*, 89 F.3d 1224, 1226 n.1 (5th Cir. 1996) ("The anti-retaliation provisions of the ADEA and Title VII are similar and cases interpreting the

latter provision are frequently relied upon in interpreting the former." (internal quotation marks omitted)). And a number of district courts have already applied *Federal Express* in Title VII cases. *See, e.g., Grigsby v. Pratt & Whitney Amercon, Inc.*, 2008 WL 2156355 (M.D. Pa. May 21, 2008); *Broxterman v. Falley's Inc.*, 2008 WL 2038917 (D. Kan. May 12, 2008); *Ellington v. Murray Energy Corp.*, 2008 WL 2019549 (D. Utah May 9, 2008). Therefore, the court sees no reason not to apply *Federal Express* in the context of Evenson's Title VII claim.

In *Federal Express* the Supreme Court held that an intake questionnaire that meets the EEOC's basic regulatory criteria for a charge does not constitute a charge in every instance. *Fed. Express*, 128 S. Ct. at 1155. "In addition to the information required by the regulations . . . if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 1157-58. Thus "the filing must demonstrate an individual's intent to have the agency initiate its investigatory and conciliatory processes." *Id.* at 1158 (internal quotation marks omitted).

> It is true that under this permissive standard a wide range of documents might be classified as charges. But this result is consistent with the design and purpose of the ADEA. Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties . . . . The ADEA, like Title VII, sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.

*Id.* (internal quotation marks omitted).

Applying this test to the EEOC filings before it, the Court noted that the plaintiff's responses on the intake questionnaire, although alleging instances of age discrimination, did not contain any specific request for EEOC action. *Id.* at 1159. Moreover, the standard language of the Form 283 that was then in use did "not give rise to the inference that the employee requests action against the employer." *Id.* "Unlike EEOC Form 5, the Intake Questionnaire is not labeled a 'Charge of Discrimination.' In fact the wording of the questionnaire suggests the opposite: that the form's purpose is to facilitate pre-charge filing counseling and to enable the agency to determine whether it has jurisdiction over potential charges." *Id.* (citation and some internal quotation marks omitted). The Court, however, focused on the six-page affidavit attached to the Form 283, in which the plaintiff asked the agency to "please force Federal Express to end their age discrimination." *Id.* (brackets omitted). The Court held that this statement was "properly construed as a request for the agency to act" and thus rendered the intake questionnaire a charge of

discrimination. *Id.* at 1160. The plaintiff's intake questionnaire constituted a charge of discrimination despite the fact that the employer never received notice of the intake questionnaire and the EEOC never acted on this charge, because "[i]t would be illogical and impractical to make the definition of charge dependent upon a condition subsequent [,EEOC action,] over which the parties have no control." *Id.* at 1158–59.

E

The court cannot locate in Evenson's Charge Questionnaire, Intake Questionnaire, or Layoff Questionnaire any "request for agency action" that is similar to the one found in *Federal Express*. To be sure, these documents were properly completed, "but the agency is not required to treat every completed Intake Questionnaire as a charge." *Id.* at 1159. *Federal Express* foresees scenarios in which the allegations of discrimination in an intake questionnaire are "so clear or pervasive" that they should be treated as a call for EEOC action, despite the absence of an explicit statement to that effect. *Id.* at 1159. But the court finds nothing in the allegations of discrimination set forth in Evenson's Charge Questionnaire, Intake Questionnaire, and the Layoff Questionnaire that warrants treating these differently from any other properly completed EEOC questionnaire form. This indicates that a charge *might* or might not be filed. If the court were to deem these filings—individually or collectively—as a

charge of discrimination, then, contrary to *Federal Express*, the EEOC would be required to treat virtually every completed intake questionnaire as a charge.

Moreover, standard form language found in these filings dispels the impression that the forms constitute a charge. For example, the Charge Questionnaire advises the filer that her identity will be disclosed to the person who allegedly discriminated against her "*[i]f* you file a charge." P. App. Ex. A at 1 (emphasis added). It also advises the filer that "*We may not be able to file a charge for you*." *Id.* (italics and underlining in original). Just as in *Federal Express*, the labels of Evenson's filings connote an initial phase of inquiry. On each form there is a statement that the purpose of the questionnaire is to assist the EEOC in determining whether there is EEOC coverage or jurisdiction, and to provide pre-charge filing counseling. Also contained on each form is this (or a materially similar)[6] statement: "When this form constitutes *the only timely* written statement of allegations of employment discrimination, the [EEOC] will, consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s)." P. App. Ex. A at 2 (emphasis added); Ex. B at 4 (emphasis added); and Ex.

---

[6]The Layoff Questionnaire substitutes "written statement of alleg{ed} . . . discrimination" (brackets and ellipsis in original) for "written statement of allegations of employment discrimination." P. App. Ex. C at 5.

C at 5 (emphasis added). The obvious inference from this statement is that when a timely formal charge of discrimination *is* later filed on EEOC Form 5, the EEOC will *not* deem the Charge Questionnaire, Intake Questionnaire, or Layoff Questionnaire to be charges of discrimination. The parties agree that Evenson later timely filed a Form 5 charge of discrimination. Therefore, Evenson's Charge Questionnaire, Intake Questionnaire, or Layoff Questionnaire—whether considered individually or together—do not constitute a charge of discrimination under Title VII, and Evenson failed to exhaust her Title VII sex discrimination claim.

\*   \*   \*

The court grants Sprint's May 29, 2008 Rule 12(b)(1) motion to dismiss and dismisses Evenson's Title VII sex discrimination claim.

**SO ORDERED.**

August 21, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE